CREDIT UNION CENTRAL FALLS

v.

Lawrence S. GROFF.

No. 2004–196–Appeal.

Supreme Court of Rhode Island.

April 22, 2005.

Patricia A. Buckley, Providence, for Plaintiff.

George M. Prescott and George M. Prescott, Jr., Lincoln, for Internenor.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

Doris P. Riendeau (Riendeau) appeals the denial of a motion to intervene in a Superior Court civil action brought by Credit Union Central Falls (CUCF or plaintiff) against attorney Lawrence S. Groff (Groff or defendant). This matter came before the Supreme Court for oral argument on March 8, 2005, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and proceed to decide the appeal at this time. For the reasons stated herein, we reverse the judgment of the Superior Court.

### I

### Facts & Travel

Groff represented both Riendeau and CUCF in unrelated matters in 2003 and 2004, respectively. Both relationships have since descended into independent lawsuits against Groff.[1] In its underlying civil action pending below, CUCF alleges Groff represented it in relation to various closing transactions in which Groff misappropriated $224,823. In connection with this case, CUCF moved, and a motion justice (first motion justice)[2] granted, a temporary restraining order (TRO) and prejudgment attachment on Groff's four bank accounts with CUCF, including his client trust account. At the time Groff's accounts were attached, his client account contained $143,045. His other three accounts had balances of $0.00, $1.87, and $5.30.

Riendeau had retained Groff in her capacity as both executrix and beneficiary of the estates of Claire and John Panozzo. In her separate action filed in Superior Court, Riendeau alleges inter alia that Groff wrongfully withheld $85,476 and that he actively misled her into believing that some of that money—which was non-probate insurance benefits—had to be turned over to Groff for probate purposes.

After the first motion justice's entry of the TRO and before the prejudgment attachment order, Chief Disciplinary Counsel moved to intervene. The first motion justice later granted Chief Disciplinary Counsel's motion to intervene and issued a prejudgment attachment order, dated March 29, 2004, stating:

"1. The plaintiff's motion is granted. The Writ of Attachment may issue in the amount of $250,000.

"2. Since there is some potential for competing claims to the funds as indicated by the Chief Disciplinary Counsel, no distribution may be made until further hearing by the court.

"3. The accounts shall remain on deposit at Credit Union Central Falls until

---

1. By order of this Court, Groff was indefinitely suspended from the practice of law as a result of "serious professional misconduct." *In re Groff*, 857 A.2d 760, 760–61 (R.I.2004) (mem.).

2. Because this case involves the intertwined actions of two different motion justices, we refer to them as "first motion justice" and "second motion justice."

further order of the court, under the same terms as contained in this Court's Temporary Restraining Order dated March 19, 2004 * * *."

Roughly one month later, Riendeau filed a motion to intervene in the action brought by CUCF against Groff. The motion was heard and denied by another Superior Court justice (second motion justice).

Riendeau appealed to this Court and requested a protective order enjoining CUCF from disbursing any of the funds in Groff's client account pending the outcome of the appeal. A single justice of this Court held the motion in abeyance, pending Riendeau's application to the Superior Court to obtain the relief requested in her motion for a protective order, or its substantial equivalent. The first motion justice subsequently issued a supplemental order establishing a procedure for submission of claims to the Superior Court, stating the following:

"1. Prior to the distribution of any funds from the client's account of defendant Lawrence S. Groff currently in the hands of plaintiff Credit Union Central Falls ("the Funds") pursuant to this court's Order dated March 29, 2004, a hearing shall be held by the court to determine entitlement to the Funds at which hearing *all interested claimants, including Doris Riendeau, shall be given an opportunity to be heard, whether or not they are a party to this action.*

"2. At least four weeks prior to the hearing specified in paragraph 1, above, counsel for the moving party shall be required to provide notice by certified mail to all potential claimants against the Funds, as identified by Disciplinary Counsel or otherwise within the knowledge of the parties or the court, including Doris Riendeau, as to the date and time for the hearing and the need for the potential claimant to *file a proof of claim with the court identifying the amount to which entitlement is claimed and the basis for the claim prior to the hearing.*

"3. *It shall not be required that any potential claimant to the Funds have formally intervened in this action* in order to preserve his or her right to be heard by the court as to any proffered proof of claim as to the Funds." (Emphases added.)

On appeal, Riendeau and CUCF dispute whether the second motion justice erred in denying Riendeau's motion to intervene as well as whether the supplemental order renders this appeal moot.

## II

### A

#### Intervention

Rule 24(a)(2) of the Superior Court Rules of Civil Procedure, governing *"[i]ntervention of [r]ight,"* provides:

"Upon timely application anyone *shall* be permitted to intervene in an action * * * when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." (Emphasis added.)

We have addressed this rule only in a single case since the 1995 amendment aligning Rule 24(a) with its federal counterpart. *See Direct Action for Rights and Equality v. Gannon,* 713 A.2d 218, 221–22 (R.I.1998) (affirming the trial justice's denial of intervention after final judgment as untimely); *see also* Rule 24 Committee Notes (stating that "[t]he 1995 amendment

of subdivision (a) follows the 1966 amendment of Federal Rule 24(a)"). Neither *Gannon*, nor the pre-amendment cases interpreting this rule, are particularly helpful in this case. *See, e.g., State v. Cianci*, 496 A.2d 139, 146 (R.I.1985) (noting that "[b]y its definitions and requirements, it is obvious to us that [intervention] has no place in a criminal proceeding"); *Marteg Corp. v. Zoning Board of Review of Warwick*, 425 A.2d 1240, 1243–44 (R.I.1981) (rejecting as untimely a post-judgment motion to intervene brought by nearby property owners in an appeal of a zoning board's revocation of a building permit); *Town of Coventry v. Hickory Ridge Campground, Inc.*, 111 R.I. 716, 723–24, 306 A.2d 824, 828 (1973) (holding the threat of property devaluation entitled abutting landowners to intervene in a land use dispute involving construction of a campground). Because our own precedent in this area is sparse, this Court may properly look to the federal courts for guidance. *Kirios v. Arsenault*, 632 A.2d 15, 16–17 (R.I.1993).

 " 'Interests in property are the most elementary type of right that Rule 24(a) is designed to protect,' and many of the cases in which a sufficient interest has been found under amended Rule 24(a)(2) have been cases in which there is a readily *identifiable interest* in land, *funds* or some other form of property." 7C Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1908 at 272–75 (1986) (quoting *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir.1970)) (emphases added). Nonetheless, "the mere fact that a lawsuit may impede a third party's *ability to recover* in a separate suit ordinarily does not give the third party a right to intervene." *Mountain Top Condominium Association v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir.1995). An intervenor's interest in a *specific fund*, however,

can provide sufficient grounds for intervention in a case affecting that fund. *Id.*; *Gaines v. Dixie Carriers, Inc.*, 434 F.2d 52, 54 (5th Cir.1970); *F.T. International, Ltd. v. Mason*, 2003 WL 21993859 at *2 (E.D.Pa.2003) (mem.).

We find *Mountain Top Condominium Association* particularly instructive on this point. That case involved competing claims to an insurance fund received by a condominium association after Hurricane Hugo significantly damaged the property. The underlying dispute in that case involved contractors' liens and various counterclaims by the association in relation to reconstruction work on the property. In order to release the liens, the association escrowed the remaining insurance funds in the registry of the district court. *Mountain Top Condominium Association*, 72 F.3d at 363–64. The appellants-intervenors in the case were condominium owners who instituted their own action against the association, alleging bad faith in distribution of the insurance funds; they sought to intervene when it became clear that resolution of the contractors' claims might deplete the remaining funds. *Id.* at 365. Recognizing that the condominium owners' claimed an interest in the specific funds at issue, rather than generally protecting their right to a recovery from the association, the Third Circuit held their interest sufficient to authorize intervention. *Id.* at 368.

 Like the intervenors in *Mountain Top Condominium Association*, Riendeau does not seek to protect her general economic interest in an eventual recovery. Rather, she seeks to protect a particularized interest in Groff's client account. This is the exact same account that CUCF has attached; one which contains limited funds that are insufficient to meet CUCF's claims, let alone those of Riendeau and

other creditors. Accordingly, Riendeau's interest in the funds in Groff's client trust account is sufficient for intervention. Furthermore, from the nature of this case, it is obvious that the disposition of the action may impair or impede her ability to protect that interest.

■ We next turn to the question of adequate representation under Rule 24. As noted above, an otherwise eligible party may not be entitled to intervene if "the applicant's interest is adequately represented by existing parties." Super.R.Civ.P. 24(a)(2). In order to show inadequate representation, a party must "produce some tangible basis to support a claim of purported inadequacy." *Public Service Co. of New Hampshire v. Patch*, 136 F.3d 197, 207 (1st Cir.1998). The United States Supreme Court has made clear that "[t]he requirement of [Rule 24] is satisfied if the applicant shows that representation of his interest *'may be' inadequate*; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972) (emphasis added).

■ In this case, Chief Disciplinary Counsel protects all of Groff's former clients to the extent that they have any interest in Groff's accounts. Riendeau, however, endeavors to go beyond merely identifying her interest by affirmatively seeking to establish that she may have a superior right to Groff's trust account. This fact is significantly important in a case where there are competing claims to a limited pool of funds—an amount that the record clearly shows is insufficient to satisfy the various claims against it. Accordingly, Chief Disciplinary Counsel's

presence in the action does not provide "adequate representation" such that Riendeau's intervention should be disallowed. It goes without saying that, as a party with clearly adverse claims to the same limited funds, CUCF (or its subrogee title insurance company) does not adequately represent Riendeau.

Based on the standard set forth in Rule 24(a)(2) and the authorities cited above, we hold that the second motion justice erred in denying Riendeau's motion to intervene.

## B

### Mootness

■ Without citation, CUCF argues that the December 3, 2004 supplemental order (and the prior order and TRO incorporated therein) provides Riendeau all the protection to which she is entitled and moots this appeal as a practical matter. In contrast, Riendeau argues that her appeal is not moot because, in order to protect her interest and fully pursue her claims she needs full-fledged party status and the corresponding right to discovery.

■ "This Court has consistently held that a case is moot if the original complaint raised a justiciable controversy, but events occurring after the filing have deprived the litigant of a continuing stake in the controversy." *Associated Builders & Contractors of Rhode Island, Inc. v. City of Providence*, 754 A.2d 89, 90 (R.I.2000). This Court will "only consider cases involving issues in dispute; we shall not address moot, abstract, academic or hypothetical questions." *Morris v. D'Amario*, 416 A.2d 137, 139 (R.I.1980). "We do not sit like a kadi under a tree dispensing justice according to considerations of individual expediency."[3] *Sullivan v. Chafee*, 703 A.2d

---

3. The New Encyclopedia Britannica defines kadi, also spelled cadi or qadi, as "a Muslim

judge who renders decisions according to the Shari'ah, the cannon law of Islâm." 9 The

748, 753 (R.I.1997) (quoting *Terminiello v. City of Chicago,* 337 U.S. 1, 11, 69 S.Ct. 894, 93 L.Ed. 1131 (1949) (Frankfurter, J., dissenting)).

The supplemental order has not deprived Riendeau "of a continuing stake in the controversy." *Associated Builders & Contractors of Rhode Island, Inc.,* 754 A.2d at 90. To the contrary, while the supplemental order appears to give some comfort to creditors in that they will have notice and the opportunity for a hearing prior to disbursement, any such hearing *may prove meaningless* to Riendeau if she has no opportunity for discovery in relation to CUCF's right to the attached funds as well as in relation to her claim's priority relative to that of CUCF (and other creditors). Furthermore, the supplemental order is not sufficiently specific in describing what will take place at the indeterminate

some-time-in-the-future hearing prior to disbursing Groff's funds. Ergo, a live controversy still exists.

### Conclusion

For the reasons stated herein, we reverse the second motion justice's denial of Riendeau's motion to intervene and vacate the corresponding judgment. The record shall be remanded to the Superior Court for entry of an order permitting Reindeau to intervene in *Credit Union Central Falls v. Groff,* (PC 04–1422).

New Encyclopedia Britannica 830 (15th ed. 1988). Justice Frankfurter was referring to Max Weber's term "kadi justice," used to describe a "legal system oriented 'not at fixed rules of a formally rational law but at the ethical, religious, political, or otherwise expediential postulates of a substantively rational law.'" Pierre Bourdieu, Essay, *The Force of Law: Toward a Sociology of the Juridical Field,* 38 Hastings L.J. 805, 825 n. 33 (1987) (quoting M. Weber on Law in Economy and Society 213 & n. 48 (M. Rheinstein ed. 1954) (Translator's note)).